**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**


**UNITED STATES OF AMERICA**      **:**

                                  **:**

       **v.**                     **:**      **Case No.: 23-CR-91-02 (CKK)**

                                  **:**

**JIN GUANGHUA, et al.,**         **:**

                                  **:**

       **Defendants.**            **:**


**United States's Memorandum Re: Cross-Examination of Chloe Huang**

The United States respectfully files this memorandum in opposition to the defendant's proposed cross-examination of Chloe Huang.  ECF No. 363 (the "Memo").  The legal portion of the Memo begins by cautioning the Court on restricting cross-examination of "a witness whose credibility could have an important influence on the outcome of the trial."  Memo at 5.  On the contrary, Agent Huang is not an important witness.  She was involved in this case only for a couple of months, serving as the Chinese translator for the main undercover agent, Erick Tarango.  Her direct examination is intended solely to admit Exhibits 404 and 404_T (now admitted) and identify the defendant as Mr. Jin (not disputed).  Given the undisputed nature of these admitted exhibits and the defendant's identity, there is little reason to attack her credibility, let alone permit cross-examination that is unbound by the rules of evidence under a generalized Sixth Amendment right.

Important witness or not, Federal Rule of Evidence 608(b)(1) permits counsel to ask witnesses about specific instances of conduct that are "probative of the character for truthfulness or untruthfulness."  Pages 1-4 of the Memo recount the facts that support the proposed cross-examination—none of them are probative of untruthfulness.  In an attempt to bridge the gap between the facts and the law, the Memo does a two-step: first, it compares Huang's conduct to "extortion"; second, it points to non-binding authority that, in some jurisdictions, extortion has

been found to be probative of untruthfulness.  The facts in the cases cited by the Memo are not comparable to Huang's so-called "extortion" and the Memo avoids contrary authority on the topic. *E.g.*, *Simmons v. Ferrigno*, No. 17-CV-6176-FPG, 2024 U.S. Dist. LEXIS 51583, at *12 (W.D.N.Y. Mar. 22, 2024); *Tapp v. Tougas*, No. 9:05-CV-1479 (NAM/DEP), 2018 U.S. Dist. LEXIS 66743, at *10-11 (N.D.N.Y. Apr. 20, 2018).  Finally, the Memo cites to law about lying (to law enforcement or on warrant applications), which is not supported by the factual record.  If there were evidence that Huang lied to fellow agents or the Court, the government would likely avoid calling her entirely.

The law is clear: Rule 608(b) "authorizes inquiry only into instances of misconduct akin to 'perjury, fraud, swindling, forgery, bribery, and embezzlement.'"  *United States v. Moore*, 2026 WL 485282 (D.D.C. Feb. 20, 2026).  The facts do not meet this standard.  The Court should also decline the Memo's invitation to allow cross-examination unrelated to any rule of evidence under the general umbrella that it is "relevant to the integrity of the investigation."

Respectfully submitted,

JOHN A. EISENBERG
ASSISTANT ATTORNEY GENERAL
FOR NATIONAL SECURITY

By:    */s/ Christopher Magnani*
Christopher Magnani (MD 1512160075)
Eli Ross (IL 6321411)
Trial Attorneys
Counterintelligence and Export Control Section
National Security Division
U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, D.C. 20530
Telephone: (202) 353-9261
Christopher.Magnani@usdoj.gov